Joseph BROWN, Appellant,

v.

STATE of Indiana, Appellee.

No. 278 S 19.

Supreme Court of Indiana.

June 18, 1979.

Rehearing Denied Aug. 21, 1979.

William J. Marshall, Oakland City, for appellant.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Gibson Circuit Court, appellant Brown was found guilty of kidnapping, armed robbery and robbery. He was sentenced to ten years imprisonment for armed robbery and to life imprisonment for kidnapping. Sentencing was withheld on the robbery conviction.

The incident giving rise to these offenses occurred on July 12, 1977. On that date, appellant appeared outside the home of Joe Bender, in rural Gibson County. It seems that appellant had previously borrowed money from Bender and, needing money again, approached Bender for an additional $1700. Bender refused to loan him the money so appellant pulled a gun and demanded it. Appellant then forced Bender into the house where he ordered Mrs. Bender to get him some money. Mrs. Bender

returned with only $520 in cash so appellant demanded that they write him a check for $1200. He further demanded that Bender call his banker in order to facilitate appellant's effort to cash the check. Appellant then forced Bender into appellant's automobile at gunpoint and drove off to get some gasoline. As appellant was driving, Bender jumped out of the car and escaped to the safety of his brother's home.

Appellant's appeal presents five issues for our review concerning: (1) whether the trial court erred in admitting certain evidence allegedly obtained in violation of appellant's Fifth and Sixth Amendment rights; (2) the admission of opinion testimony concerning appellant's sanity by an expert witness; (3) the admission into evidence of alleged hearsay testimony by a State's witness; (4) the trial court's refusal to give three of appellant's tendered instructions; (5) whether it was error to impose sentences upon both the armed robbery and kidnapping convictions.

## I.

 Appellant's first assignment of error concerns the trial court's decision to allow into evidence certain incriminating remarks appellant had máde to police after his arrest, the gun and bullets used in the offenses, and a waiver of rights form executed by appellant. Brown contends that all of this evidence should have been excluded because it was obtained from him without a knowing and intelligent waiver of his *Miranda* rights.

The evidence at trial showed that following the occurrences on July 12, 1977, appellant fled by bus to Las Vegas, where he gambled away the money taken from the Benders. In an effort to return to Indiana, appellant was arrested for hitchhiking in Salina, Kansas. The Indiana authorities were notified of appellant's arrest and State Trooper Zickmund and Gibson County Sheriff Emmert travelled to Kansas to pick him up. In Salina, Zickmund and Emmert orally advised appellant of his *Miranda* rights but did not obtain a written waiver because they did not have a form with them

at that time. However, both stated that appellant appeared to understand his rights.

During the return trip to Indiana, appellant was reminded that he did not have to say anything to the officers. The three engaged in general conversation concerning the weather and scenery until they approached Gibson County. At this point, Officer Zickmund asked appellant if he would show them the location of the gun. Appellant responded that he would do so on condition that he be allowed to see his wife that evening. Appellant then directed the officers to a truck stop where he retrieved the gun used in the offenses from some weeds. Appellant was then transported to the police station in Princeton, Indiana, where he signed a waiver of rights form and made further statements to police. The gun thus recovered, and four bullets contained therein, were introduced at trial along with the waiver of rights form over appellant's objection.

Appellant contends that all of this evidence should have been excluded as it was obtained in violation of his *Miranda* rights. He argues that since he did not sign a waiver form until after he had led police to the weapon, that there was therefore no evidence establishing a voluntary relinquishment of the right to counsel and the right not to incriminate himself. We disagree.

The question of whether or not there has been a valid waiver of *Miranda* rights is controlled by determining, from the totality of the circumstances, whether the defendant, after being advised of such rights, voluntarily chooses to forego them. *Richardson v. State,* (1978) Ind., 373 N.E.2d 874, 875; *Nacoff v. State,* (1971) 256 Ind. 97, 267 N.E.2d 165. We review this question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there is substantial evidence of probative value to support the trial court's finding. *Murphy v. State,* (1977) Ind., 369 N.E.2d 411.

"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong

proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda*, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."

*North Carolina v. Butler,* (1979) —— U.S. ——, ——, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286.

In the present case it is undisputed that appellant was given full *Miranda* advisement in Salina, Kansas, and at least partial advisement while in the police vehicle en route to Indiana. At no time did appellant request counsel before being questioned or indicate a desire to refuse to answer questions. He did not remain silent but chose to lead the police to the location of the gun. There is nothing in the record, nor are there allegations in the briefs, that would indicate that the officers threatened to keep appellant from seeing his wife or that they offered this privilege in order to induce his cooperation. Rather, the opportunity to see his wife was a condition which appellant himself placed on his cooperation. We think that a voluntary waiver of appellant's *Miranda* rights may be clearly inferred from his words and conduct. *Cf. Butler, supra; Morris v. State,* (1977) Ind., 364 N.E.2d 132, 136; *Hewitt v. State,* (1973) 261 Ind. 71, 77, 300 N.E.2d 94, 98; *Miller v. State,* (1974) 161 Ind.App. 563, 316 N.E.2d 589. The gun, bullets and incriminating remarks made while on the return trip to Indiana were thus properly admitted.

Appellant has also argued that the trial court erred by admitting into evidence the waiver form which appellant signed at the Princeton police station. He contends that the document was introduced merely as an attempt to establish that appellant's earlier cooperation was voluntary. This theory is not supported by the record. The trial testimony of Sheriff Emmert recounted several conversations he had had with appellant following the execution of the waiver form. The form was thus properly admitted as a foundation for these subsequent statements.

## II.

■■ Appellant next objects to the admission of opinion testimony by court appointed psychiatrist, Dr. Charles Crudden. Before testifying that he believed appellant to be sane, Dr. Crudden stated that his expert opinion was based upon his personal examination of appellant, a summary report of appellant's patient records from the Evansville State Hospital, the report of an examination conducted by clinical psychologist, Mark Stephens, and a social service report prepared by William Seymour, a social worker trained in psychology. Dr. Crudden further stated that this was the normal procedure for conducting psychiatric examinations pursuant to court appointments and that the reports used in formulating his opinion were of the sort customarily relied upon by experts in this field.

Appellant objected to this opinion testimony on the ground that it was based, at least in part, on reports prepared by persons other than Dr. Crudden. He also argues that he was denied his right of confrontation because Mark Stephens and William Seymour were not called as witnesses. Both of these arguments were rejected by this court in *Smith v. State,* (1972) 259 Ind. 187, 285 N.E.2d 275. There, we made it clear that a psychiatric expert's use of materials, such as were used in the present case, is altogether proper.

"In the realm of expert testimony, it is obviously preferable to have the opinion derived from a distillation of as much reliable information as possible. This results in a more intelligent opinion because

an opinion is only as good as the data upon which it is based. Any alleged lack of reliability can be brought out on cross-examination, and, as long as the expert is otherwise qualified, should go to weight of the evidence and not its competency. The fact that a psychiatric expert bases his opinion in part on reports from a state mental hospital does not make the testimony and opinion of the expert excludable."

*Id.* at 259 Ind. 191, 285 N.E.2d 277. *Cf. Johnson v. State,* (1978) Ind., 380 N.E.2d 1236.

Appellant further contends that the testimony of Dr. Crudden was improper because it was not elicited through a hypothetical question. This argument is also without merit. The use of hypothetical questions is the means of obtaining an expert's opinion when the expert has no personal knowledge of the facts and he is requested to offer an opinion based on facts previously adduced at trial. The opinion of this psychiatric expert was, however, based on his personal examination of the defendant along with available medically related reports and records. *Cf. Smith, supra.* A hypothetical question was thus not a necessary means of eliciting such an opinion. There is no error presented in this issue.

### III.

 Following the commission of the offenses, the victim, Mr. Bender, related his story to the investigating officer, Mr. Zickmund. At trial, Officer Zickmund described his investigation of the offenses and recounted what Mr. Bender had told him at their initial meeting. Appellant's hearsay objection to this testimony was overruled and he now claims that this ruling constituted reversible error in that he was denied his right to confront Mr. Bender. Mr. Bender did, in fact, testify at trial and was subject to cross-examination. We thus fail to see how appellant's right of confrontation was denied. *Buttram v. State,* (1978) Ind., 382 N.E.2d 166. Furthermore, the statement by Bender, as related by Officer Zickmund, was nothing more than a greatly

condensed version of the story which Mr. Bender later developed in great detail in his trial testimony.

Appellant also requests that we overrule our decision in *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482. We decline to do so. There is no error here.

### IV.

 Appellant next directs arguments to the trial court's rejection of three of his tendered instructions. The first such instruction concerned witness credibility, the resolution of conflicts in the evidence presented and the reasonable doubt standard. Appellant contends that this instruction was necessary because of "numerous conflicts" between the testimony of Mr. and Mrs. Bender. The record reveals that the conflicts of which appellant complains go to minor details of the incident. The stories of Mr. and Mrs. Bender are in substantial agreement on the major points, including the facts that appellant demanded money while holding a gun on Mr. Bender, that they were both frightened of appellant, and that appellant forced Mr. Bender to leave with him at gunpoint. Moreover, the trial court gave several instructions covering the subjects of witness credibility and the reasonable doubt standard. We feel that the jurors were adequately instructed on the law they needed to apply in this case.

Appellant also tendered the following instruction:

"You are instructed that the unexplained failure of a party to produce a witness within its control may give rise to an inference that had the witness testified the testimony would have been unfavorable to that party's cause."

This instruction was refused by the trial court and no similar instruction was given. Appellant argues that this instruction was required because Mark Stephens and William Seymour, both of whom prepared reports later relied upon by Dr. Crudden, were both available and within the State's control but the State made no effort to explain their absence. This argument is without merit. The State was under no

duty to produce either Stephens or Seymour and thus, was not required to explain its failure to do so.

> "[T]here is abundant authority that an expert witness who is available for cross-examination at the trial may use such records [as those prepared by Seymour and Stephens] as the basis for an opinion without the proponent having to call every person who made a recorded observation."

*Smith v. State,* (1972) 259 Ind. 187, 190, 285 N.E.2d 275, 276, quoting *Birdsell v. United States,* (5th Cir. 1966) 346 F.2d 775, 779–780. Also, it does not appear that either of these witnesses was more available to, or within the control of, the State, than appellant. If appellant sincerely desired to have their testimony, he could have called Mr. Stephens and Mr. Seymour as witnesses in rebuttal to Dr. Crudden's, opinion evidence. *Johnson v. State,* (1978) Ind., 380 N.E.2d 1236.

Finally, appellant argues for reversal based on the trial court's refusal to give the following instruction:

> "You are instructed that if you believe that any of the State's witnesses have exhibited prejudice or anger against the defendant and satisfied you that they have not testified truly and are not worthy of belief, and you think their testimony should be disregarded, you may disregard it altogether."

In support of the propriety of this instruction appellant cites this Court's decision in *King v. State,* (1977) Ind., 369 N.E.2d 1076. Appellant's reliance upon *King* is misplaced. There, we stated:

> "A jury may be instructed that it may disregard the entire testimony of a witness believed to have testified falsely; but false testimony about one matter does not render all other testimony incompetent."

*Id.* at 369 N.E.2d 1077. The tendered instruction was clearly an incomplete and thus inaccurate statement of the law. It was properly refused. The jury was instructed on credibility of witnesses and burden of proof. There is no error here.

## V.

Finally, appellant contends that it was error to impose sentences on both the armed robbery and kidnapping convictions. For purposes of double jeopardy, the two offenses are not considered to be the same as each requires proof of facts which the other does not. *See generally Elmore v. State,* (1978) Ind., 382 N.E.2d 893. Since the offenses are not the same, it was proper to impose sentences upon both convictions.

The judgment of the trial court is affirmed.

All Justices concur.