Aubrey **ASHBY**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 385S112.

Supreme Court of Indiana.

Dec. 12, 1985.

Rehearing Denied Feb. 28, 1986.

Susan K. Carpenter, Public Defender, and C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., and Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury on eight separate counts: Counts I, II and III, Armed Robbery; Counts IV and V, Kidnapping; Count VI, Rape; Count VII, Attempted Murder; and Count VIII, Criminal Confinement. The court sentenced appellant as follows: Counts I and III, ten (10) years each; Count II, twenty (20) years to be served concurrently with the ten (10) year sentences imposed on Counts I and III; Count IV, fifty (50) years to be served consecutively with the above counts; Count V, fifty (50) years to be served concurrently with Count IV; Count VI, fifty (50) years to be served consecutively with the above counts; Count VII, fifty (50) years to be served consecutively with the above counts; and Count VIII, fifty (50) years to be served concurrently with Count VII.

The facts are: Appellant, armed with a pistol, entered a service station and demanded the attendant open the cash register. Appellant took nearly $600 and placed the money in his pocket. He then instructed the attendant to hand over his wallet and valuables. Witnesses observed these activities and called the police. When officers arrived, appellant took the attendant as hostage and used him as a shield to effect his escape.

A few minutes later appellant accosted a couple as they sat in their automobile. Appellant forced the man into the trunk. Appellant then drove the automobile to a rural area where he raped V.R., the female passenger. V.R. escaped after the rape and proceeded to a nearby farmhouse for assistance. Appellant then drove the automobile to a closed service station in Princeton, Indiana. There appellant ordered the man from the trunk and threatened to kill him. When appellant's attention was momentarily diverted, the man escaped. As

the man ran into a nearby trailer park, appellant fired several shots. Appellant then fled the scene in the automobile. He was captured the next day.

Appellant argues the trial court erred when it denied his motion for a change of venue from the county. Appellant, a black man, was charged with crimes that included the rape of a white teenage girl. In a hearing on his motion, appellant presented evidence of two sources of community prejudice. The first was racial prejudice. To this end appellant presented evidence that a burning six foot cross and a skinned raccoon were placed in the yard of the jail where he was housed. He also presented evidence of conversations in the community in which the speakers demonstrated racial bias and bigotry. On this issue he presented the testimony of two local attorneys who indicated that, based on their combined thirty years of legal experience, they believed appellant would have a difficult time obtaining an impartial jury in the community.

Appellant's second issue of community bias centered around the pretrial publicity given the incidents. Appellant introduced the texts of stories which were presented in the local print and electronic media. The evidence indicated the public was exposed on more than one hundred occasions to appellant's name and a journalistic version of the incident over local television and radio stations. In addition various news reports were published in the local and Evansville papers. Appellant attempts to equate this coverage with that in *Irvin v. Dowd* (1961), 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751.

■ The trial court denied appellant's motion for change of venue but reserved the right to *sua sponte* grant the motion following the *voir dire* of the jury. The ruling of the trial court on a motion of this nature is reviewed only for an abuse of discretion. Ind.R.Cr.P. 12. When an appellant asserts a denial of a fair trial due to adverse community prejudice, he bears the burden to establish adverse publicity and that the jurors were unable to set aside any preconceived notions of guilt and render a verdict based upon the evidence at trial. *Yeagley v. State* (1984), Ind., 467 N.E.2d 730. There is a presumption that the juror's *voir dire* is truthful. However, this presumption can be overcome by a showing of a general atmosphere of prejudice throughout the community. *Smith v. State* (1984), Ind., 465 N.E.2d 1105.

■ In the case at bar the vast majority of potential veniremen indicated that they had been exposed to some of the facts of the case. The court and the parties conducted an extensive *voir dire* aimed at impaneling a jury capable of meeting the *Yeagley* mandate. The jurors selected testified they would be able to fulfill their obligation under the law. A review of the evidence does not reveal a widely pervasive community prejudice which would support a conclusion that the potential jurors were not truthful in their testimony. The racial bias evidence indicates that some members of the community did possess bias which would make them unfit to serve as jurors. However, appellant does not contend any of the jurors selected were in fact involved in any of the racial incidents.

We do not find the requisite degree of community bias on the issue of pretrial publicity. The media coverage was factually based and lacked the degree of sensationalism found in the *Irvin* case. Additionally, the coverage lasted but a few days spread over nearly a month of time. This pales in comparison to the long-term coverage in *Irvin*. We find the Court did not abuse its discretion when it denied appellant's motion for a change of venue.

Appellant contends the trial court erred when it concluded appellant was not entitled to the opportunity to have a separate and individual *voir dire* of the jury. He argues there was a dual necessity for a *voir dire* of this nature. First, is the likelihood that potential jurors would be reluctant to discuss their racial bias in front of other community members. Secondly, since the jury pool was drawn from the small community in which the incident occurred, the potential existed that venire-

men would be exposed to the facts of the case through the interviewing of other potential jurors. He contends the second fear was realized when a potential juror testified she had heard shots fired during the incident. The juror was immediately excused following her comment.

 The trial court has broad discretion in regulating the *voir dire* of the jury and will not be reversed absent a showing of an abuse of that discretion. *Wickliffe v. State* (1981), Ind., 424 N.E.2d 1007. In *Smith, supra* and *Burris v. State* (1984), Ind., 465 N.E.2d 171, this Court indicated there was no right to a *voir dire* of this nature in a capital case. We find the trial court committed no error. The court asked a limited number of questions of the potential jurors concerning their racial bias. He then allotted the parties thirty minutes to conduct additional *voir dire*. This gave appellant ample opportunity to delve into possible racial prejudice among the jurors. We do not find merit in appellant's contention that potential jurors could become contaminated by exposure to the facts of the case during *voir dire*. We do not find error in the trial court's failure to anticipate that a potential juror would also be a potential witness who was unknown to the police investigating the incident.

Appellant argues the trial court erred when it conducted the general *voir dire* and then limited the parties to an additional thirty minutes per side. He avers he was denied an adequate opportunity to question the potential jurors on the issue of racial prejudice. This practice has been approved by this Court when the trial court permits the parties to submit written questions to supplement the oral *voir dire*. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102.

In the case at bar appellant submitted a series of questions prior to the court's *voir dire*. The court used the thrust of some of these questions in its *voir dire*. After appellant conducted his phase of the *voir dire,* the court inquired whether he had additional written questions he wished to submit. Appellant answered in the affirmative. An off the record discussion was held at the bench. The court then asked the jurors whether there was any reason they could not render a fair and impartial verdict. After the court ascertained the jurors believed they could be fair and impartial, the court began the process of eliciting peremptory challenges. The record reveals the court did not ask any additional questions as part of the *voir dire*. The record also reveals appellant did not object to the court's moving forward in the matter without asking further questions. The record does not reveal that any questions were in fact submitted for the court's consideration.

We see nothing in this record which will permit this Court to intelligently review the issue raised as required by *Smith v. State* (1985), Ind., 475 N.E.2d 27.

Appellant contends the trial court erred when it denied his request for the appointment, at public expense, of a psychiatrist to interview appellant and to assist in his defense. On October 4, 1983, appellant filed his notice of intention to offer an insanity defense. The court then followed Ind.Code § 35–36–2–2 and appointed two disinterested experts to examine appellant. They reported appellant was competent to stand trial. Thereafter appellant filed the motion in question. The court denied the motion. On December 23, 1983, appellant unsuccessfully attempted suicide. During the hospitalization, following the suicide attempt, medical personnel, including a psychologist and a psychiatrist, interviewed appellant. Appellant then petitioned the court for public funds to be used to compensate these experts for the time they spent in conversation with appellant's counsel, and for the time which would be required if they testified. The court granted the motion to pay these persons their reasonable expenses.

Appellant argues the court failed to follow the holding in *Ake v. Oklahoma* (1985), —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 when it denied his initial motion. The court in *Ake* held that "[w]hen a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a

significant factor at trial the Constitution requires that a State provide access to a psychiatrist's assistance on the issue, if the defendant cannot otherwise afford one." *Id.* at ——, 105 S.Ct. at 1092, 84 L.Ed.2d at 60.

The State argues the trial court did in fact comply with this mandate when it granted the motion to pay reasonable expert witness fees to the doctors, including the psychiatrist. The State maintains these individuals testified on behalf of the appellant, they consulted with counsel prior to trial concerning the events surrounding the suicide attempt and that appellant had the authority, through the court's order, to use these experts in the development of the defense and to assist in the preparation for cross-examination.

The record shows the psychiatrist assisted in the preparation of the defense. He testified on behalf of the appellant. He also consulted with counsel prior to that testimony. Obviously, neither the trial court nor this Court is privy to those consultations, thus a determination of whether the psychiatrist in fact assisted with counsel in the defense is impossible. However, in appellant's motion for public funds, his attorney stated:

"[H]e makes this motion in good faith and for the sole purpose of properly representing the defendant in this case and that in his professional opinion the defendant cannot properly be represented nor can he properly prepare for trial and properly defend himself at trial without adequate arrangements being made for Gibson County to compensate the three said doctors for their professional time in this matter.

"WHEREFORE, the defendant prays that the court authorize his attorney to consult with the three said doctors before trial and if appropriate to make arrangements for them to testify on behalf of the defendant with Gibson County paying a reasonable sum for the professional time of the three said doctors and for all other just and proper relief in the premises."

This motion was granted.

■ The form, nature and extent of consultations were to be at counsel's discretion so long as the costs were reasonable. Appellant argues the experts offered no trial testimony on the issue of sanity at the time of the incident. While this is true, we find nothing in the court's order which would have precluded counsel from seeking such a determination and offering it at trial. Thus we find the actions by the court were sufficient to comply with the requirements of *Ake.*

Appellant argues the trial court erred when it permitted a rebuttal witness to testify as to a study he had conducted on the issue of the application of the insanity defense to a variety of criminal offenses.

■ Appellant is correct in his statement of the law that statistical data alone may not be used to determine the mental state of an individual. *Wyatt v. State* (1956), 235 Ind. 300, 133 N.E.2d 471. However, in the case at bar, the fact that the witness had conducted studies concerning the plea of insanity was used to qualify the witness as an expert in this field.

The State then correctly posed a hypothetical question to the witness covering the behavior of appellant at the time the crime was committed. Based upon these facts already in evidence, the witness then stated his opinion concerning the sanity of appellant at the time the offense was committed. In *Wyatt, supra* at 305, 133 N.E.2d at 474, the court stated:

"Statistical surveys regarding human behavior are valuable for many purposes, but they cannot in themselves be made the basis of depriving any man, innocent before the law, of his liberty, without at least applying the general information to the particular individual whose liberty is placed in jeopardy by the proceedings."

■ In the case at bar, the witness did apply general information to the particular individual, the appellant. There was no error in so doing.

Appellant contends the court erred when it overruled his objection to the testimony of the two court-appointed experts on the issue of appellant's sanity at the time of the incident. Both doctors testified they had no firsthand knowledge of the events constituting the crimes. The State asked if they had formed an opinion on the issue of appellant's sanity at that time. Appellant objected on the grounds that the State must elicit such an opinion through the use of a hypothetical question when the witness has no firsthand knowledge of the incident.

■ We find this issue was resolved in *Brown v. State* (1979), 271 Ind. 129, 390 N.E.2d 1000. The facts of *Brown* are similar to those in the case at bar. In *Brown* we said:

"The use of hypothetical questions is the means of obtaining an expert's opinion when the expert has no personal knowledge of the facts and he is requested to offer an opinion based on facts previously adduced at trial. The opinion of this psychiatric expert was, however, based on his personal examination of the defendant along with available medically related reports and records. *Cf. Smith* [*v. State* (1972), 259 Ind. 187, 285 N.E.2d 275.] A hypothetical question was thus not a necessary means of eliciting such an opinion. *Id.* at 134, 390 N.E.2d at 1004.

Thus the trial court did not err when it overruled the objection.

Appellant maintains the court erred when it denied his motion for a mistrial which was made during the State's closing argument. The prosecutor made the following comment to the jury:

"Billy [defense counsel] also said if we could do anything at all for the victims, [V.R.] and Kevin Caniff, we'd do it, but ladies and gentlemen of the jury, you can do something for them. You can ensure that he's convicted, that he's found guilty, and that he's held accountable and responsible for everything ..."

Appellant objected to the comment. The trial court sustained the objection and ad-monished the jury. The trial court denied a subsequent motion for mistrial. The standard of review for allegedly improper argument was outlined in *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843.

■ The State concedes the remarks constitute improper conduct. The State does argue that the comment's persuasive effect was not especially great and certainly not beyond the curative effect of the admonition. In view of the ruling of the court and the admonition of 'the jury, we find no reversible error. *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

■ Appellant avers the trial court erred when it refused to give his tendered jury instruction on the voluntary intoxication defense. In the case at bar, appellant devised and revised his plan of attack, operated an automobile and managed to elude the police for several hours. The court did not err as there was no evidence on the record to support the giving of the instruction. *Terry v. State* (1984), Ind., 465 N.E.2d 1085.

Appellant argues the trial court erred when it gave eight final instructions which he contends impermissibly shifted the burden of proof on the element of intent. A portion of one of these instructions on Armed Robbery is reproduced as an example of the issue.

"To convict the defendant, the State must have proved the defendant

1. Knowingly or intentionally

2. Took property form [sic] another person or the presence of another person

3. By using or threatening the use of force on any person or by putting any person in fear

4. While armed with a deadly weapon.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of Armed Robbery, a Class B felony. However,

even if the State did prove each of the above elements beyond a reasonable doubt, and the defendant also proved by a preponderance of the evidence that at the time of such conduct, as a result of a mental disease or defect, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, then you should find the defendant not responsible by reason of insanity at the time of the offense."

First, he contends the instruction placed on the defendant the burden of disproving an essential element of the crime. This he asserts is in violation of *Patterson v. New York* (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 and *Leland v. Oregon* (1952), 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302. In *Ward v. State* (1982), Ind., 438 N.E.2d 750, this Court discussed these cases in light of our insanity defense statute, Ind. Code § 35–41–4–1. In *Ward* this Court said:

"We, therefore, hold the statute is not unconstitutional as claimed by the appellant because it does not shift the burden of proof of one of the elements of the crime to the defendant, but simply shifts the burden of establishing his affirmative defense of insanity. Proof required of the State that appellant committed the act 'knowingly' is not tantamount to proof that the defendant is 'sane'." *Id.* at 753.

In his second argument he contends the instruction did not inform the jury that they were to consider the evidence of insanity in the context of its determination of whether the State has met its burden on the issue of intent. Rather he contends the instruction tells the jury to consider the evidence only in the isolated context of their consideration of the insanity defense. ▉ We find no such limitation in the instruction. The court advised the jury that the State had the burden to prove the crime was committed either knowingly or intentionally. There is nothing to preclude the jury from considering appellant's mental state in reaching its conclusion of the

issue. Rather the instructions ask the jury to follow the mandate of Ind.Code § 35–41–4–1 which provides:

"(a) A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt.

(b) Notwithstanding subsection (a), the burden of proof is on the defendant to establish the defense of insanity (IC 35–41–3–6) by a preponderance of the evidence."

We find no error in giving the instruction.

Appellant maintains the court erred when it gave Final Instruction No. 10. The Instruction defined the term "preponderance of the evidence" as follows:

"The term 'preponderance of the evidence' means the weight of the evidence. The number of witnesses testifying to a fact on one side or the other or the quantity of evidence introduced on one side or the other is not necessarily of the greater weight. The evidence given upon any fact in issue which convinces you most strongly of its truthfulness is of the greater weight."

Appellant contends the term has been defined as the greater weight of the evidence and not as the weight of the evidence. *See Travelers Indemnity Company v. Armstrong* (1982), Ind., 442 N.E.2d 349 and *Black's Law Dictionary* 1064 (5th ed. 1979). He argues that by improperly defining the term, as it was to be used in conjunction with his insanity defense, the court confused the jury and might have lead the jury to apply the more stringent but clearly defined standard of beyond a reasonable doubt.

▉ We find no error. The instruction itself contains two references to the phrase "greater weight." We find the instruction conveyed to the jury the essential information required for them to properly consider the insanity defense.

▉ Appellant claims the trial court erred when it ordered the written copies of the final instructions sent to the jury during its deliberations. In *Denton v. State* (1983), Ind., 455 N.E.2d 905, this Court held

where the final instructions have been properly read to the jury, the error in sending the instructions to the jury is harmless. Appellant argues the error was not harmless as the instructions were not properly read. This argument is premised on his claim the court erred in giving the instruction defining the term preponderance of the evidence. Having found no error in giving the instruction we find the error of sending the instruction to the jury to be harmless.

 Appellant claims the trial court erred when during the sentencing portion of the case it permitted a law officer of an adjoining county to testify concerning criminal charges pending against appellant in that county. First, he argues by allowing information of pending charges not reduced to convictions the presumption of innocence is violated. He cites *McNew v. State* (1979), 271 Ind. 214, 391 N.E.2d 607 (Prentice, J., dissenting) for the proposition that the court may not consider charges which have resulted in an acquittal. However, *McNew* also holds a court can consider pending charges at a sentencing hearing. Appellant asks this Court to reverse its holding in *McNew* on this latter point. We find no reason to change this proposition of law.

Secondly, appellant contends his due process rights were violated. He cites the trial court's denial of his motion for a continuance and its overruling of his objection to the testimony based upon surprise. The trial court properly noted appellant was not being tried on the merits of the charges pending in the other jurisdiction. Appellant had no right to a continuance on this ground.

Thirdly, he argues the United States Supreme Court has held that convictions which were obtained without counsel may not be considered in sentencing on a subsequent conviction. *See United States v. Tucker* (1972), 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592. Appellant contends there existed a serious question as to whether he was afforded proper counsel after he requested it during his interrogation in the

other jurisdiction. During that interrogation he made certain incriminating statements which were placed into evidence at the sentencing hearing. The case at bar is distinguishable from *Tucker*. The court in *Tucker* found that it was conclusively determined the previous convictions were constitutionally invalid. In the case at bar we have only appellant's assertion as to that fact. We find no error in the consideration of the pending charges.

The trial court is in all things affirmed.

All Justices concur.