**Preston SPEED, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 26S00–8603–CR–317.

Supreme Court of Indiana.

Nov. 24, 1986.

Timothy R. Dodd, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Preston Speed was convicted of rape, a class A felony, at the conclusion of a jury trial in the Gibson Circuit Court. He was sentenced to twenty (20) years. On direct appeal, the sole issue is the admissibility of testimony regarding Appellant's statement to the police.

Appellant was arrested and charged with rape. Subsequently, he was questioned by State Police Officer Gregory Oeth and Gibson County Deputy Sheriff David Knowles, who first advised Appellant of his *Miranda* rights. Knowles also handed Appellant an advisement and waiver form, telling him that by signing the form, he was not making a confession, that he was just signing his rights, and that all he was doing was saying he understood his rights. Appellant read the form himself and signed it. Appellant proceeded to talk with the officers, and made remarks which incriminated himself. Prior to trial, Appellant moved to suppress all evidence of this statement, which motion was denied. At trial, over Appellant's objection, Oeth and Knowles testified concerning Appellant's statements to them. Thereafter, Appellant, himself, testified that he had indeed told Oeth and Knowles the things they had testified about, and did not attempt to impugn their testimony; rather, he explained that he had lied when he talked to them, "to keep him from ... asking questions." Appellant makes no assertion that he took the stand due only to the admission of his statement, and his testimony goes beyond that issue.

Appellant first claims that Knowles' comments misled him and resulted in an unknowing and involuntary waiver, thus rendering his statement inadmissible.

■ A waiver of one's *Miranda* rights occurs when he, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. *Shelton v. State* (1986), Ind., 490 N.E.2d 738, 741. The voluntariness and intelligence of a waiver is reviewed by looking at the totality of the circumstances. *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 484. Thus, a signed waiver form is not dispositive of the issue, but is merely evidence tending to support finding a voluntary and intelligent waiver. *Brown v. State* (1979), 271 Ind. 129, 132, 390 N.E.2d 1000, 1002–1003, *reh. denied* (1979). Likewise, Knowles' comment at issue here, although equivocal, did not, in and of itself, vitiate all subsequent statements. This is especially true in light of the fact that the signature on the waiver form is not, itself, a waiver; it is the act of proceeding, aware of one's rights, that constitutes a waiver. *Shelton*, Ind., 490 N.E.2d at 741.

■ Recently, in *Moran v. Burbine* (1986), 475 U.S. ——, —— – ——, 106 S.Ct. 1135, 1141–1142, 89 L.Ed.2d 410, 421–422, Justice O'Connor wrote, once again clarifying the requirements of *Miranda*, as follows:

"Miranda holds that '[the defendant may waive effectuation' of the rights conveyed in the warnings 'provided the waiver is made voluntarily, knowingly and intelligently.' [citation omitted] ... First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [citations omitted.]

\*     \*     \*     \*     \*     \*

Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the state's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."

The facts of the present case reveal that Oeth and Knowles advised Appellant of his rights. Appellant does not contest the sufficiency of these rights. Furthermore, Appellant was given a form entitled, "YOUR RIGHTS," which contained the following information:

"Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

\*      \*      \*      \*      \*      \*

WAIVER OF RIGHTS

\*      \*      \*      \*      \*      \*

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

Appellant never questioned the contents of either the rights which were read to him, or the waiver form which he signed. Nor is there any evidence from the record which even suggests confusion or misunderstanding on his part. In fact, he did ask about the provision regarding a lawyer, and was told he could have one if he wanted. He proceeded to sign the waiver and talk with Oeth and Knowles. Looking at the totality of the circumstances, we agree with the trial court that Appellant "at all times knew he could stand mute and request a lawyer, and that he was aware of the state's intention to use his statement to secure a conviction." *Id.* Once this showing is made, there is no question but that Appellant's statement was admissible. *Id.*

■ We further note that any alleged error on this issue would have been harmless. Appellant's statement included such incriminating remarks as: he struggled with the victim; he bit her; she might have been unwilling; and he showed her a knife that he always carried. Oeth and Knowles were allowed to testify concerning these comments. At trial, Appellant chose to testify on his own behalf, and testified that he did, in fact, make such statements. At no time has Appellant alleged that he took the stand due only to the admission of his statement. In fact, his testimony goes beyond that. Thus, the facts about which he complains were put into evidence by his own testimony, making any alleged error harmless. *See Malott v. State* (1985), Ind., 485 N.E.2d 879, 883.

Appellant's entire statement to the police was recorded on video-audio tape, but the quality of the audio was at times very poor. At a pre-trial hearing, the trial court suppressed the recording due to the poor quality. At trial, Oeth testified that his answers concerning Appellant's statement were based in part on his own recollection of the events, and in part on a review of the tape. Appellant objected to Oeth's testimony which was based on the review of the tape, and argued that if the tape was so inaudible as to be inadmissible, Oeth should not have been able to rely on his review of it. Oeth's testimony shows that his review was successful only because he had originally been present at the statement, and that the tape would be inaudible to one listening for the first time. The trial court then reversed its ruling and allowed both Oeth's testimony, and the taped statement to be admitted into evidence.

Appellant now claims that the tape recording should not have been admitted into evidence due to its failure to comply with *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795, and furthermore, that since the

tape was inadmissible, so too were any references to the statement by Oeth or Knowles which were based on their review of the tape.

■■■ First, Appellant's argument is totally lacking of citation to any authority, and is thus waived. *Hunter v. State* (1986), Ind., 492 N.E.2d 1067, 1070. Second, while Appellant attempts to explain away his trial tactics, in essence, he placed the trial court in a "no-win" situation, leaving himself in a position to object no matter how the court resolved the problem. He argued on the one hand, that the testimony of the police officers was inadmissible due to the Best Evidence Rule, but then argued that the best evidence, the tape, was inadmissible, and still later argued for its admissibility. By so arguing, Appellant opened the door to admission of the tape, and waives any error. Finally, Appellant's premise that the officers could not use the tape to refresh their memories due to its poor quality, is simply without merit. We have long held that simply because a witness uses something to refresh his recollection does not require him to produce it at trial. *LeFlore v. State* (1972), 258 Ind. 458, 460–462, 281 N.E.2d 876, 877, *reh. denied* (1972); *Wabash And Erie Canal v. Bledsoe* (1854), 5 Ind. 133, 136. Logic further dictates that simply because something is not understandable to the jury, does not preclude a witness from using it to refresh his recollection.

The trial court is affirmed.

GIVAN, C.J., and SHEPARD, J., concur.

DeBRULER, and DICKSON, JJ., concur in result without opinion.