# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2018, 10:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Darah Mariah Kammerer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 28, 2018

Court of Appeals Case No.
82A01-1708-CR-2015

Appeal from the Vanderburgh
Circuit Court

The Honorable David D. Kiely,
Judge

Trial Court Cause No.
82C01-1610-F2-5859

**Baker, Judge.**

[1]    Darah Kammerer appeals her convictions for Level 2 Felony Dealing in Methamphetamine,[1] Level 6 Felony Possession of a Controlled Substance,[2] and Level 6 Felony Maintaining a Common Nuisance.[3]  She argues that the trial court erred by admitting her statements to police into evidence, that her sentence was inappropriate in light of the nature of the offenses and her character, and that the trial court's sentencing order should be corrected. Finding no error, that the sentence was not inappropriate, and that the sentencing order was unclear, we affirm and remand with instructions to clarify the order as explained herein.

# Facts

[2]    On October 3, 2016, Evansville police officers executed a search warrant at a residence owned by Matthew Elliott.  After knocking and receiving no answer, the police forcibly entered the house and found Elliott, Kammerer, and another man and escorted them outside.  During the search, officers found the following:

- A pipe, scales, baggies, and a purse in the master bedroom, which was used primarily by Kammerer.  Inside the purse, officers discovered a bag containing a substance used to cut methamphetamine and a document listing numbers and weights.

---

[1] Ind. Code § 35-48-4-1.1.

[2] I.C. § 35-48-4-7.

[3] Ind. Code § 35-45-1-5.

- A bag in the washing machine containing 37.06 grams of methamphetamine and a cutting agent.
- A makeup bag, a wooden box, and scales in the kitchen. Inside the bag, officers discovered several acetaminophen, oxycodone, and hydrocodone pills and a bag with .09 grams of methamphetamine. Inside the box, officers recovered another pipe with burnt residue.

[3]     At the time of the search, Elliott and Kammerer were dating and Elliott allowed Kammerer to stay at the house in exchange for methamphetamine. She kept her things in the master bedroom and the purse and makeup bag belonged to her. Kammerer supported herself by selling methamphetamine and buyers would come to the house "a few times a day." Tr. Vol. IV p. 38. The bag with 37.06 grams of methamphetamine and a cutting agent belonged to both Kammerer and Elliott, but Elliott testified that Kammerer kept it and used it more, and that he would normally ask her permission before taking anything from it. *Id.* at 36, 47.

[4]     During the search, police placed Kammerer in handcuffs and sat her in a lawn chair across from the house. Detective Robert Schmitt then orally advised Kammerer of the following:

> You have the right to remain silent. If you do say anything, what you say can be used against you in the court of law. You have the right to consult with a lawyer and have that lawyer present during any questioning. If you cannot afford a lawyer, one will be appointed for you if you so desire. If you choose to talk, you have the right to stop the interview at any time. Do you understand these rights I've read to you? With these rights in mind, do you wish to speak with me?

Tr. Vol. II p. 32. Kammerer responded that she understood her rights.

[5] Later that same afternoon,[4] Detective Joshua Patterson interviewed Kammerer, who was still sitting across from the house. They had the following exchange:

> Q:     . . . okay, have you been read any kind of Miranda rights or anything?
>
> A:     Yes, I have.
>
> Q:     You have, do you understand those?
>
> A:     Yes.
>
> Q:     Okay, do you want me to, I'll . . . go through them with you again real quick. You have a right to remain silent. Anything you say can be used in court. You have the right to talk to an attorney and have them present with you before any questioning if you wish, however; you can start answering questions without a lawyer, and at any time you can stop answering the questions for the purpose of consulting a lawyer, okay. Do you understand that?
>
> A:     Yes, sir.

---

[4] The record does not reveal the amount of time that passed between Detective Schmitt's advisement and Detective Patterson's advisement. It appears that Detective Patterson gave his advisement while the search was ongoing and the trial court concluded that the two advisements were "very close in time." Tr. Vol. IV p. 105.

> Q:   Are you okay to talk to me right now, do you agree to talk to me right now? Like I said, you can stop at any time if you want to, okay?
>
> A:   Okay.

*Id.* at 14-15. After this exchange, Kammerer admitted to using methamphetamine but denied knowing about any "substantial amount" of drugs or who owned them. Tr. Vol. IV p. 108-11.

[6] On October 5, 2016, the State charged Kammerer with one count of Level 2 felony dealing in methamphetamine, two counts of Level 3 felony dealing in a narcotic drug, and one count of Level 6 felony maintaining a common nuisance. On January 19, 2017, the State dismissed one of the counts of dealing in a narcotic drug. On May 1, 2017, Kammerer filed a motion to suppress, among other things, her statements to Detective Patterson, which the trial court denied on June 9, 2017. Kammerer's jury trial took place on June 21 and 22, 2017. At trial, the State moved to introduce Kammerer's statements to Detective Patterson into evidence and the trial court admitted the statements over Kammerer's objections. On June 22, 2017, the jury found Kammerer guilty of Level 2 felony dealing in methamphetamine, Level 6 felony possession of a controlled substance, and Level 6 felony maintaining a common nuisance.

[7] Following a July 27, 2017, sentencing hearing, the trial court sentenced Kammerer to concurrent terms of twenty years imprisonment for Level 2 felony dealing in methamphetamine and eighteen months for each of the remaining

charges, for an aggregate twenty-year term. The trial court also ordered that the sentence be served consecutively to another sentence in an unrelated cause. Kammerer now appeals.

# Discussion and Decision

## I. Statements to Detective Patterson

First, Kammerer contends that the trial court erred by admitting her statements to Detective Patterson into evidence because they were made in violation of her constitutional rights. The decision to admit or exclude evidence lies within the discretion of the trial court and we will only reverse if its decision was clearly against the logic and effect of the facts and circumstances before it or if the court has misinterpreted the law. *Carpenter v. State*, 786 N.E.2d 696, 702-03 (Ind. 2003).

*Miranda* warnings are used to secure a defendant's constitutional right against self-incrimination. *Palilonis v. State*, 970 N.E.2d 713, 732 (Ind. Ct. App. 2012); *see also Miranda v. Arizona*, 384 U.S. 436, 461 (1966). If the State claims that a defendant waived this right, the State bears the burden to prove beyond a reasonable doubt that the waiver was voluntary, knowing, and intelligent. *State v. Keller*, 845 N.E.2d 154, 161 (Ind. Ct. App. 2006). Among other things, the State must establish that the defendant was adequately advised of his rights and that he understood those rights prior to waiving them. *Id.* That advisement must inform a defendant that:

> he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 479. On appeal, this Court examines the advisement in light of the totality of the circumstances. *State v. Banks*, 2 N.E.3d 71, 78 (Ind. Ct. App. 2014).

[10] Detective Schmitt's advisement was proper, but she counters that Detective Patterson's advisement was deficient and misled her about her rights, rendering the first advisement "stale." Appellant's Br. p. 20 (citing *United States v. Pruden*, 398 F.3d 241, 246-47 (3rd Cir. 2005)). The record indicates that Detective Patterson advised Kammerer that: (1) she had the right to remain silent, (2) anything she said could be used against her in court, (3) she had the right to speak to an attorney, and (4) she had a right to have an attorney present before any questioning. Detective Patterson did not, however, expressly advise her that, if she could not afford an attorney, one would be appointed for her prior to any questioning and that she had the right to the presence of an attorney during questioning.[5] While Detective Patterson's advisement was incomplete, under the totality of the circumstances, these omissions are not fatal.

---

[5] Kammerer also claims that Detective Patterson mischaracterized her right to stop answering questions at any time because he initially stated that she could stop answering at any time for the purpose of consulting a lawyer. However, she ignores the fact that, after confirming that she understood her rights and asking if she wanted to talk, he stated, "Like I said, you can stop at any time if you want to, okay?" Tr. Vol. II p. 14-15.

Our Supreme Court has held that a *Miranda* advisement

> need not be repeated if the circumstances surrounding the interruption or adjournment of the process have not deprived the suspect of the opportunity to make an informed and intelligent assessment of his interests involved in the interrogation. The rationale is that if the interruption is part of a continual effort by the police to gather information from the suspect, there can be little doubt as to the suspect's interests in the matter.

*Shane v. State*, 615 N.E.2d 425, 427 (Ind. 1993) (internal citations omitted).

Kammerer confirmed that she understood her rights after speaking with Detective Schmitt and prior to speaking with Detective Patterson. While the precise length of time between the two advisements is unknown, both advisements occurred in the same afternoon while police were searching the house and Kammerer was sitting handcuffed across from the house. Because the interruption between the advisements was part of a continual effort by police to gather information, Kammerer was not deprived "of an opportunity to make an informed and intelligent assessment of [her] interests," and Detective Patterson did not need to readvise her of her rights. *Ogle v. State*, 698 N.E.2d 1146, 1149 (Ind. 1998); *see also Owens v. State*, 431 N.E.2d 108, 110-11 (Ind. 1982) (holding that defendant did not need to be readvised of his *Miranda* rights where he was fully advised and waived his rights twice days before and where, prior to the interrogation, he was given a "general reminder" of those rights and he confirmed that he was still aware of them).

Moreover, a second, limited advisement does not necessarily undermine an initial, proper advisement. *See*, *e.g.*, *Grey v. State*, 273 Ind. 439, 444-45, 404 N.E.2d 1348, 1351-52 (1980) (holding that, despite evidence that subsequent advisement was incomplete, evidence of prior complete warnings and affirmations that defendant understood is sufficient to support a conclusion that defendant was adequately advised of rights); *Brown v. State*, 271 Ind. 129, 132, 390 N.E.2d 1000, 1003 (1979) (holding that where the defendant received a full *Miranda* warning in Kansas, appeared to understand it, and then received an incomplete advisement of his rights en route to Indiana, the trial court could infer a waiver of his *Miranda* rights). Under these circumstances, we find that Kammerer was adequately advised of her rights. Therefore, the trial court did not err by admitting her statements to Detective Patterson into evidence.

## II. Appropriateness

Next, Kammerer contends that the length of the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and her character pursuant to Indiana Appellate Rule 7(B). We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[15]     Kammerer was sentenced on three convictions. She was convicted of a Level 2 felony, for which she faced a sentence of ten to thirty years, with an advisory term of seventeen and one-half years. Ind. Code § 35-50-2-4.5. She received a twenty-year term to be served concurrently with the other offenses. She was also convicted of two Level 6 felonies, for each of which she faced a sentence of six months to two and one-half years, with an advisory term of one year. I.C. § 35-50-2-7(b). She received an eighteen-month sentence on each count with both to be served concurrently to each other and the other offense. Thus, the trial court imposed an aggregate term of twenty years. Had the trial court imposed maximum, fully consecutive terms on all counts, she would have received an aggregate term of thirty-five years.

[16]     With respect to the nature of the offenses, Kammerer supported herself by selling methamphetamine out of her boyfriend's house. The police discovered scales, baggies, pills, and a bag with 37.06 grams of methamphetamine and a cutting agent in the house. While Kammerer repeatedly characterizes her crimes as a small, unsophisticated operation meant only to support her own addiction, Elliott testified that multiple people came over several times a day to buy methamphetamine and that, on at least one occasion, he witnessed Kammerer sell an ounce of methamphetamine. Further, the amount of methamphetamine involved was considerable—enough to last a typical user five weeks, *see* tr. vol. IV p. 95 (Detective Patterson testifying that a typical methamphetamine user takes one gram a day), and over three times the amount

required to raise an offense to a Level 2 felony, absent an enhancing circumstance, *see* I.C. § 35-48-4-1.1(e).

[17] With respect to Kammerer's character, she attributes her crimes to addiction and insists that her history demonstrates that she is not dangerous. However, the amount of drugs she had, coupled with Elliott's testimony, indicates that she was selling more than what she needed to feed her addiction. She also has a considerable criminal history, spanning two states, including felony convictions for possession of cocaine, and numerous misdemeanor convictions for prostitution, theft by deception, and visiting a common nuisance. Further, while out on bond for the present offenses, she was arrested again and pleaded guilty to Level 4 felony possession of methamphetamine. While we acknowledge that she expressed remorse in a letter to the trial court and that her criminal history has a thirteen-year gap that she claims is a result of her sobriety, her presentence report indicates that the first time she used methamphetamine was in 2015 and she has not explained why she began using a new drug after maintaining sobriety for more than a decade.

[18] In short, we do not find the sentence imposed by the trial court inappropriate in light of the nature of the offenses or Kammerer's character.

## III. Sentence Clarification

[19] Finally, Kammerer argues that the written sentencing order does not clearly reflect the trial court's intent as expressed in the court's oral sentencing statement. "When oral and written sentencing statements conflict, we examine

them together to discern the intent of the sentencing court. We may remand the case for correction of clerical errors if the trial court's intent is unambiguous." *Walker v. State*, 932 N.E.2d 733, 738 (Ind. Ct. App. 2010) (internal citation omitted).

[20] In an oral statement, the trial court clearly stated that the charges were to be served concurrently to each other and consecutively to Kammerer's sentence in another cause. Tr. Vol. II p. 61. However, in its written order, the trial court checked both the "concurrently" and "consecutively" boxes next to each charge and the description boxes merely list the numbered counts and the other cause number. It is apparent the trial court was trying to order that the sentences would run concurrently to one another and consecutively to the sentence in the unrelated cause, but given the potential for misunderstanding, we remand so that the order can be clarified.

[21] The judgment of the trial court is affirmed and remanded with instructions to amend the sentencing order to show that Kammerer's sentences in the present case are to run concurrently with each other and consecutively to her sentence in the other cause.

Riley, J., and Brown, J., concur.