# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
Duerring Law Offices
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Sep 20 2012, 9:23 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EFREN MENDOZA-VARGAS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1201-CR-27 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George Biddlecome, Judge
Cause No. 20D03-0911-FA-00053

**September 20, 2012**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Efren Mendoza-Vargas ("Mendoza-Vargas") was convicted in Elkhart Superior Court of Class A felony dealing in methamphetamine, Class D felony maintaining a common nuisance, and Class D felony possession of marijuana. Mendoza-Vargas appeals and claims that the trial court abused its discretion in admitting evidence regarding Mendoza-Vargas's post-Miranda statements to the police. Concluding that the police failed to scrupulously honor Mendoza-Vargas's right to remain silent, we reverse and remand for retrial.

**Facts and Procedural History**

In the fall of 2009, the Elkhart County Interdiction and Covert Enforcement ("ICE") team arranged several controlled buys between an undercover ICE officer, a confidential informant, and suspected drug dealers. Eventually, their investigation led them to a house on Pottawattomie Drive in Elkhart, Indiana. The ICE team was then able to obtain a warrant to search the residence. The officers executed the warrant late in the evening of November 5, 2009. The officers approached the front door of the house, knocked on the door, and stated, "Police department, search warrant." Tr. p. 194. The officers were able to see a man, later identified as Mendoza-Vargas, walking toward the front door. However, instead of opening the door, Mendoza-Vargas stopped, turned around, and began to walk away toward the interior of the home. At this point, the police forced the front door open, entered the house, and detained Mendoza-Vargas. The police sat Mendoza-Vargas on a couch in the living room with his hands cuffed in front of him while they continued their search.

2

In the upstairs bedroom of the house, the police found a boot with $2,000 cash hidden inside, a black trash bag with several cell phones, and documents with Mendoza-Vargas's name on them. In a closet adjoining the living room and a first-floor bedroom, the police found another boot with $2,900 cash hidden inside, a pair of jeans with $5,000 cash in one of the pockets, and a package containing over 430 grams of marijuana. In the first-floor bedroom, the police found a toolbox containing digital scales and two packages containing over 630 grams of methamphetamine. The cash found in the boots and jeans included some of the buy money used during the controlled buys.

As the police searched the house, ICE employee Jennifer Gomez ("Gomez") was brought in to speak with Mendoza-Vargas, as she was fluent in both English and Spanish. Gomez read to Mendoza-Vargas his Miranda rights in Spanish, explaining to him: that he had the right to remain silent; that anything he said could be used against him in court; that he had a right to an attorney and have the attorney be present during any questioning; that if he could not afford an attorney, one would be appointed for him at no expense to him; and that if he agreed to speak with the police but later changed his mind, he could stop answering questions and request an attorney at any time. Tr. pp. 239-40. Mendoza-Vargas acknowledged to Gomez that he understood these rights.

When Gomez asked if Mendoza-Vargas wished to answer any questions, he shook his head indicating "no." Tr. pp. 48, 240. One of the undercover officers then told Mendoza-Vargas that dealing drugs carried a harsh sentence, informed him that he could "help" himself by cooperating with the police, and asked him if he knew of any people who dealt drugs in Elkhart County. The undercover officer then asked Mendoza-Vargas

3

a question regarding rubber bands found in the house. Gomez did not translate this question but instead informed the undercover officer that Mendoza-Vargas had indicated that he did not want to answer any questions. Mendoza-Vargas then looked at Gomez and asked her, "What if I don't want to answer that?" Tr. p. 241. When Gomez related this question to the undercover officer, the officer stated that he did not believe the rubber bands were "incriminating" and that if Mendoza-Vargas did not want to answer the question, he did not have to answer the question. Mendoza-Vargas appeared "overwhelmed," and Gomez asked him if he wanted time to think about whether he wanted to answer any questions. Mendoza-Vargas told Gomez that he would like five minutes to think. The police therefore left Mendoza-Vargas alone on the couch, with Gomez standing in the doorway to the nearby bedroom.

After about five to ten minutes, the undercover officer came back into the living room and asked Mendoza-Vargas, "Can I ask you a question?" Tr. p. 243. Mendoza-Vargas turned around and looked at the officer, "paying attention to him and waiting for the question." Id. The officer asked Mendoza-Vargas if his "contact" was in Indiana. Mendoza-Vargas replied "no" and indicated that his contact was in Mexico. Mendoza-Vargas then began to speak freely with the officers. He informed them that he knew several people in Elkhart County who were dealing drugs, that he had lived in the house for approximately three months, that he was staying in the first-floor bedroom where the toolbox containing the methamphetamine had been found, that twice weekly approximately four kilograms of methamphetamine were sent from Mexico to the house

4

for resale by a man named Abel Ruellos, and that approximately $1,000 was sent back in exchange for each shipment.

On November 9, 2010, the State charged Mendoza-Vargas with Class A felony dealing in methamphetamine, Class D felony maintaining a common nuisance, and Class D felony possession of marijuana. The jury found Mendoza-Vargas guilty as charged, and the trial court sentenced Mendoza-Vargas to an aggregate sentence of forty years. Mendoza-Vargas now appeals.

**Standard of Review**

Mendoza-Vargas claims that the trial court abused its discretion in admitting his statements to the police into evidence. Questions regarding the admission of evidence are within the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. Wells v. State, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. Id. Our review of rulings for the admissibility of evidence is essentially the same regardless of whether the challenge is made through a pretrial motion to suppress or by an objection at trial. Jackson v. State, 890 N.E.2d 11, 15 (Ind. Ct. App. 2008). In either case, we will not reweigh the evidence and consider conflicting evidence in a light most favorable to the trial court's ruling. Id. However, we also consider any undisputed evidence that is favorable to the defendant. Id. Additionally, we may consider foundational evidence introduced at trial in conjunction with any evidence from a suppression hearing that is not

in direct conflict with the trial evidence. Kelley v. State, 825 N.E.2d 420, 427 (Ind. Ct. App. 2005).

## Discussion and Decision

Mendoza-Vargas claims that the trial court should have suppressed any evidence regarding his statement to the police because his statements were obtained in violation of his right to remain silent as set forth in Miranda v. Arizona, 384 U.S. 436 (1966).[1] Specifically, Mendoza-Vargas argues that the police violated his Miranda rights by continuing to question him even after he indicated that did not want to speak with the police.

When one who is subject to custodial interrogation requests the assistance of counsel, all questioning must immediately cease and interrogation can be resumed only when the accused initiates a communication with police, and when it is apparent that he knowingly and intelligently waived his right to counsel. Moore v. State, 498 N.E.2d 1, 8 (Ind. 1986) (citing Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983)). Things are different, however, when the suspect does not request counsel but instead only invokes his right to remain silent. See United States ex rel. Riley v. Franzen, 653 F.2d 1153, 1158 (7th Cir. 1981) (noting the difference between a suspect invoking the right to counsel and a suspect invoking the right to silence).

In Miranda v. Arizona, the United States Supreme Court wrote that "[o]nce warnings have been given the subsequent procedure is clear. If the individual indicates in

---

[1] Mendoza-Vargas makes no cognizable argument that the admission of his statements violated the Indiana Constitution and focuses his argument solely on a federal constitutional analysis.

6

any manner, at any time prior to or during questioning, that he wishes to remain silent, *the interrogation must cease.*" 384 U.S. 436, 473 (1966) (emphasis added). Although this provision could be read as prohibiting all further questioning of an individual who has indicated that he wishes to remain silent, the Court later clarified that this is not what was intended, stating:

> Clearly, therefore, neither this passage nor any other passage in the Miranda opinion can sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.

Michigan v. Mosley, 423 U.S. 96, 102 (1975). Instead, when a suspect has only invoked his right to remain silent:

> there is not a per se rule prohibiting the authorities from ever initiating a discussion or further questioning the individual on the subject. Rather, it must be shown on a case by case basis that the authorities "scrupulously honored" the defendant's right to cut off questioning at any time, and that he knew and understood these rights and voluntarily waived them.

Id. at 9; see also Berghuis v. Thompkins, 130 S. Ct. 2250, 2273-74 (2010) (stating "the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored'").

It is the State's burden to prove that the suspect's right to remain silent was scrupulously honored. Jenkins v. State, 627 N.E.2d 789, 796 (Ind. 1993); Moore, 498 N.E.2d at 10. There are several non-exclusive factors used to determine whether interrogation was properly resumed, including: the amount of time that lapsed between interrogations; the scope of the second interrogation; whether new Miranda warnings

7

were given; and the degree to which police officers pursued further interrogation once the suspect has invoked his right to silence. United States v. Gillaum, 372 F.3d 848, 856 (7th Cir. 2004) (citing United States v. Schwensow, 151 F.3d 650, 658 (7th Cir. 1998); Mosley, 423 U.S. at 104-05).

Here, the record indicates that after being informed of his Miranda rights, Mendoza-Vargas was asked if he wanted to answer questions. Mendoza-Vargas responded by shaking his head "no." This was an obvious invocation of his right to remain silent. But instead of immediately ceasing any questions, the police continued to question Mendoza-Vargas even after he had invoked his right to remain silent. The undercover officer told Mendoza-Vargas that he could "help himself out" by cooperating with the police, noted that dealing drugs carried a harsh prison sentence, and asked Mendoza-Vargas if he knew people in Elkhart County who dealt drugs. This can hardly be called "scrupulously honoring" Mendoza-Vargas's right to remain silent. Instead, it was an effort to induce Mendoza-Vargas into answering questions.

The undercover officer then asked Mendoza-Vargas a question regarding rubber bands found in the house, prompting translator Gomez to remind the officer that Mendoza-Vargas had indicated that he did not want to answer any questions. Still, Mendoza-Vargas apparently understood enough English to comprehend the question without translation and asked Gomez whether he had to answer that question, indicating that he was unsure of whether he had to answer questions despite his invocation of his right to remain silent.

8

Then, instead of waiting for any substantial period of time, Gomez asked Mendoza-Vargas if he needed time to think about whether he wanted to answer any questions. Again, this appears to have been an attempt to induce him to cooperate by answering questions. When Mendoza-Vargas indicated that he needed a few minutes to think things over, the police gave Mendoza-Vargas some time. But when the undercover officer asked Mendoza-Vargas if he could ask him a question, he asked the question before Mendoza-Vargas indicated that he did, in fact, wish to answer questions at that time. And when Mendoza-Vargas chose to answer, the officer chose not to give Mendoza-Vargas new Miranda warnings.

Under these facts and circumstances, we are unable to conclude that the State met its burden of proving that Mendoza-Vargas's right to remain silent was scrupulously honored. The police did not wait a substantial amount of time before re-initiating questioning and instead immediately began to question Mendoza-Vargas right after he invoked his right to remain silent. Nor did they re-advise him of his Miranda rights before re-initiating questioning. See Borkholder v. State, 544 N.E.2d 571, 574 (Ind. Ct. App. 1989) (noting that police should cease questioning immediately and resume questioning only after the passage of a significant amount of time and readvise defendant of Miranda rights); Gillaum, 372 F.3d at 856 (listing factors to consider in whether police scrupulously honored the right to remain silent).

These facts and circumstances stand in stark contrast to those cases where our courts have held that a suspect's right to remain silent was scrupulously honored by the police. See, e.g., Pilarski v. State, 635 N.E.2d 166, 170 (Ind. 1994) (concluding that

9

suspect's right to remain silent was scrupulously honored where police reinitiated questioning approximately ninety minutes after the defendant invoked his right to remain silent and reread Miranda warnings prior to renewed questioning); Buie v. State, 633 N.E.2d 250, 259 (Ind. 1994)[2] (concluding that defendant's right to remain silent was scrupulously honored where he was "given Miranda warnings at every turn," twice signed Miranda waiver forms, and police made no further attempt to obtain a statement from defendant after he indicated he did not wish to speak with the police); Jenkins v. State, 627 N.E.2d 789, 796 (Ind. 1993) (holding that police scrupulously honored defendant's right to remain silent where they did not question him after his invocation of his rights, but instead defendant initiated the conversation with the police by asking questions, at which point the officers reminded defendant that he had previously asserted his right to remain silent); Moore v. State, 498 N.E.2d 1, 9-10 (Ind. 1986) (holding that police scrupulously honored defendant's right to remain silent where police did not renew questioning of defendant until the day after he asserted his right to remain silent and where police readvised him of his Miranda rights before defendant gave statement); Moore v. State, 551 N.E.2d 459, 462 (Ind. Ct. App. 1990) (holding that defendant's right to remain silent was scrupulously honored by the police where detective stopped questioning defendant on the subject after he refused to answer questions and instead asked defendant whether he would consent to being tested for a sexually-transmitted disease). Accordingly, we conclude that the trial court abused its discretion when it

---

[2] The double jeopardy analysis in Buie was abrogated in our supreme court's seminal holding in Richardson v. State, 717 N.E.2d 32 (Ind. 1999). But this abrogation had no effect on Buie's holding regarding the Fifth Amendment right to remain silent.

admitted Mendoza-Vargas's statements to the police into evidence, because the police failed to scrupulously honor Mendoza-Vargas's right to remain silent.[3]

The question therefore becomes whether this error requires us to reverse Mendoza-Vargas's convictions and remand for retrial.[4] The State argues that any error in the admission of Mendoza-Vargas's statements was harmless, given the contraband and illegal drugs found at the house where Mendoza-Vargas was arrested. We do not doubt that this evidence might be sufficient to support a conviction without Mendoza-Vargas's statements regarding his involvement in the drug trade at the house. But this is not dispositive under a harmless error analysis.

Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party. Corbett v. State, 764 N.E.2d 622, 628 (Ind. 2002). And to determine whether an error in the introduction of evidence affected the appellant's substantial rights, we assess the probable impact of that evidence upon the jury. Id.

---

[3] The cases cited by the State are distinguishable in that they address issues of whether a defendant's statement and/or waiver of Miranda rights was voluntary. See, e.g., Miller v. State, 770 N.E.2d 763, 767 (Ind. 2002) (addressing claim that defendant's statement to the police and waiver of Miranda rights was involuntary); Luckhart v. State, 736 N.E.2d 227, 229 (Ind. 2000) (addressing claim that defendant's statement to the police was involuntary in light of police deception); Ellis v. State, 707 N.E.2d 797, 801 (Ind. 1999) (addressing claim that defendant's confession to the police was involuntary in light of police deception and alleged coercion, and defendant's alleged drug and alcohol use and lack of sleep); Brown v. State, 271 Ind. 129, 131, 390 N.E.2d 1000, 1002 (1979) (involving claim that defendant's waiver of Miranda rights was invalid); Allen v. State, 787 N.E.2d 473, 480 (Ind. Ct. App. 2003) (addressing claim of voluntariness of defendant's statement in light of police deception); Whitfield v.State, 699 N.E.2d 666, 669 (Ind. Ct. App. 1998) (addressing question of voluntariness of defendant's confession in light of claims of police promises of lenience and favorable treatment). None of these cases involve situations where a defendant invoked his or her right to remain silent but was still subjected to questioning.

[4] Mendoza-Vargas makes no argument that there was insufficient evidence to convict him, thus barring retrial. See Cuto v. State, 709 N.E.2d 356, 362 (Ind. Ct. App. 1999) (noting that retrial is allowed when a conviction is reversed on appeal for legal error, and the evidence at trial was sufficient to support the original conviction).

Here, we are unable to say that evidence regarding Mendoza-Vargas's own incriminating statements had no impact on the jury's decision. This is not a case where the evidence is overwhelming and the defendant's own incriminating statements would have little impact on the jury's decision to convict. Instead, the State argued the theory of constructive possession because Mendoza-Vargas was not found in direct possession of any of the substances and relied on Mendoza-Vargas's statements during its closing argument to bolster its claim of constructive possession and intent. Tr. pp. 369-70. We therefore reverse Mendoza-Vargas's convictions and remand for retrial, at which Mendoza-Vargas's statements to the police shall be inadmissible given the police failure to scrupulously honor Mendoza-Vargas's invocation of his right to remain silent.

Reversed and remanded for retrial.

VAIDIK, J., and BARNES, J., concur.