

FILED

Dec 09 2019, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Risinger,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 9, 2019<br><br>Court of Appeals Case No.<br>19A-CR-281<br><br>Appeal from the Washington<br>Circuit Court<br><br>The Honorable Larry W. Medlock,<br>Judge<br><br>Trial Court Cause No.<br>88C01-1703-MR-185 |

**Bradford, Judge.**

# Case Summary[1]

In March of 2017, Joshua Risinger's trailer was set on fire and burned, killing Jeffrey Charles Givan.[2] During the course of three interviews with law enforcement, Risinger made incriminating statements. The State charged Risinger with murder, felony murder, and Level 4 felony arson. Twice, Risinger moved to suppress his statements, claiming that they were given involuntarily and in violation of his *Miranda* rights. The trial court denied both motions. In November of 2018, a jury trial was held, after which a jury found Risinger guilty but mentally ill of murder and felony murder and guilty of arson. The trial court merged the felony murder and arson convictions with the murder conviction and sentenced Risinger to sixty years of incarceration. Risinger contends, *inter alia*, that the trial court erroneously admitted the statements he made during the three police interviews because (1) they were made involuntarily and (2) they were made after detectives failed to scrupulously honor his invocation of his *Miranda* rights. Because we agree that the detectives failed to scrupulously honor Risinger's right to remain silent pursuant to *Miranda*, we reverse.

---

[1] We heard oral argument in this matter on October 30, 2019, at Batesville High School. We would like to extend our sincerest gratitude to the faculty, staff, and students for their hospitality. We also commend counsel for their excellent written and oral advocacy.

[2] In the statements he made to the detectives, Risinger called Givan "Gilbert". The two names will be used interchangeably throughout this opinion.

# Facts and Procedural History

[2] On March 14, 2017, Risinger's trailer was set on fire and burned, killing Givan. As he was leaving the scene of the fire, Risinger was arrested and taken to the Washington County Sheriff's Department. Once at the Sheriff's Department, Indiana State Police Detectives Matt Busick and Brian Busick and Salem Police Officer Ronnie May took Risinger into a deputy's office for an interview. Risinger was seated in a chair with his hands cuffed in front of him, his suitcase was placed in front of him, and he was given a glass of water. Detective Brian Busick read Risinger his *Miranda* rights, and Risinger stated that he understood them. Risinger also signed a form acknowledging that he had read and understood his *Miranda* rights, and his signature contained a "7-5" which Risinger explained was always included in his signature. Tr. Vol. II p. 244. The detectives asked Risinger about the fire and how it might have started. Risinger stated that he did not know how the fire had started but that his trailer did not have electricity. Risinger explained that he had left the trailer and had begun walking down the highway after seeing black smoke and flames. He also told the detectives that a day earlier he had allowed a homeless man named Gilbert to stay at his trailer and that Gilbert was in the living room where the fire started. Approximately nineteen minutes into the interview, Risinger told the detectives "I'm done talking." Tr. Vol. III p. 12. Detectives Matt and Brian Busick, however, continued questioning Risinger. They asked Risinger about his family, the fire, how the fire started, and explained to him that they believed he was a man who would tell the truth. After agreeing that he was an honest

person, Risinger made numerous incriminating statements. Multiple times throughout the portion of the interview where Risinger made incriminating statements, he again stated that he was done talking, but the detectives continued asking questions until they concluded the interview.

[3] On March 15, 2017, at approximately 11:00 a.m. and 6:15 p.m., Detective Matt Busick conducted a second and third interview with Risinger. During the interviews, Risinger made further incriminating statements. The interviews lasted approximately twelve and thirty minutes, respectively, and were ceased by Detective Busick once Risinger told Detective Busick that he was done talking.

[4] On March 15, 2017, the State charged Risinger with murder. On March 29, 2017, the State also charged Risinger with felony murder and Level 4 felony arson. Prior to trial, Risinger twice moved to suppress the statements he made in the three police interviews, both of which motions were denied by the trial court. Between November 26 and November 30, 2018, a jury trial was held. On November 30, 2018, the jury found Risinger guilty but mentally ill of murder and felony murder and guilty of arson. On January 8, 2019, the trial court merged the felony murder and arson convictions with the murder conviction and sentenced Risinger to sixty years of incarceration.

# Discussion and Decision

[5] Risinger contends that the trial court erroneously allowed the admission of his statements made during the three police interviews. We review the trial court's decision to admit evidence for an abuse of discretion. *Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004). The trial court's decision is an abuse of discretion if it is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Pursuant to the United State Supreme Court's decision in *Miranda v. Arizona*, a person who is subjected to a custodial interrogation must first be warned that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning[,]" should he so desire. 384 U.S. 436, 479 (1966). Statements made to police by a person in police custody in response to police interrogation are inadmissible at trial, unless the State proves beyond a reasonable doubt that they were preceded by a knowing and voluntary waiver of the privilege against self-incrimination and were themselves voluntarily given. *Johnson v. State*, 584 N.E.2d 1092, 1098–99 (Ind. 1992). Specifically, Risinger contends that (1) the waivers of his *Miranda* rights and statements were given involuntarily, and (2) the detectives failed to scrupulously honor his invocation of his *Miranda* rights.

# I. Voluntariness

[6] Risinger contends that the trial court erred in admitting the statements he made during three police interviews because the statements and waivers were involuntarily given. We review the trial court's determination of voluntariness

as any other sufficiency matter. *Wilkes v. State*, 917 N.E.2d 675, 680 (Ind. 2009). We will not reweigh the evidence and will affirm the trial court's finding if it is supported by substantial evidence. *Id.* Regarding a voluntary waiver of *Miranda* rights,

> such a waiver occurs when a defendant, after being advised of those rights and acknowledging an understanding of them, proceeds to make a statement without taking advantage of those rights. In judging the voluntariness of a defendant's waiver of rights, we will look to the totality of the circumstances to ensure that a defendant's self-incriminating statement was not induced by violence, threats, or other improper influences that overcame the defendant's free-will. The State bears the burden of proving beyond a reasonable doubt that the defendant voluntarily waived his rights.

*State v. Banks*, 2 N.E.3d 71, 80 (Ind. Ct. App. 2014) (internal citations omitted). Regarding Risinger's contention that his statements were involuntary,

> Unlike the Federal Constitution, Indiana law imposes on the State the burden of proving beyond a reasonable doubt that a confession is voluntary. *Lego v. Twomey*, 404 U.S. 477, 488–89, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Pruitt v. State*, 834 N.E.2d 90, 114–15 (Ind. 2005) (plurality); *Miller v. State*, 770 N.E.2d 763, 767 (Ind. 2002); *Owens v. State*, 427 N.E.2d 880, 884 (Ind. 1981). In evaluating a claim that a statement was not given voluntarily, the trial court is to consider the "totality of the circumstances," including any element of police coercion; the length, location, and continuity of the interrogation; and the maturity, education, physical condition, and mental health of the defendant. *Miller*, 770 N.E.2d at 767. To determine that a statement was given voluntarily, the court must conclude that inducement, threats, violence, or other improper influences did not overcome the

defendant's free will. *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004).

*Id.* Specifically, Risinger contends that because he was suffering from a mental illness and detectives continued to question him after he told them he was done talking, his statements were not a product of his free will.

[7] We conclude that Risinger's waivers of his *Miranda* rights were voluntary. Before each interview Detective Busick read Risinger's *Miranda* rights to him. Risinger acknowledged verbally or through a thumbs up that he understood those rights and was willing to talk to Detective Busick. Risinger also read and signed a form acknowledging and waiving his rights.

[8] We also conclude that Risinger's statements to the detectives were voluntary. While it is true Risinger was suffering from a mental illness, that is only one of the numerous factors to be considered by the trial court in determining voluntariness. *See Banks*, 2 N.E.3d at 81 (noting that mental illness is only a factor to be considered by the trier of fact in determining whether a statement was voluntary). The three interviews were not lengthy, lasting approximately ninety minutes, twelve minutes, and thirty minutes, respectively, and conducted over the course of two days. The interviews all occurred in a deputy's office, with Risinger sitting in a chair with his hands cuffed in the front of his body. While Risinger notes that, on the day of the first interview he remained handcuffed for nearly three-and-one-half hours throughout the interview process, we cannot say this is unreasonable considering that he was a suspected murderer and arsonist. In the first interview, he was given water to drink and

his possessions were sitting by his feet in front of him. The detectives used the Reid[3] and cognitive interviewing techniques; although Risinger characterizes these techniques as deceptive, these are standard interviewing techniques routinely used by law enforcement. The trial court agreed with Dr. Parker's determination that Risinger was sane at the time he committed the offense and that his delusional disorder did not manifest throughout the interview and only appeared near the end of the first interview. Given the totality of the circumstances, the trial court did not abuse its discretion in concluding that Risinger made his waivers and statements voluntarily.

## II. *Miranda*

Risinger contends that the trial court abused its discretion by admitting the majority of the statements he made during police interviews because they were obtained in violation of his right to remain silent pursuant to *Miranda*. Specifically, Risinger contends that his rights were violated when the detectives continued to question him after he had stated "I'm done talking." Tr. Vol. III p. 12.

> An assertion of the *Miranda* right to remain silent must be clear and unequivocal. In determining whether a defendant has

---

[3] "Our court has explained the Reid technique before: 'the first phase of the Reid Technique consists of nonaccusatory questioning. The interview then shifts to the second phase, where the questioner does most of the talking and claims that the investigation clearly shows that the suspect committed the crime. A questioner using the Reid Technique introduces different minimizing themes, in essence excuses or justifications, to make it easier and more comfortable for the suspect to admit to the crime.'" *Shelby v. State*, 986 N.E.2d 345, 365 n.11 (Ind. 2013) (quoting *Malloch v. State*, 980 N.E.2d 997, 893 (Ind. Ct. App. 2012) (internal quotations omitted)).

asserted this right, the statements are considered as a whole. Mere expressions of reluctance to talk do not invoke the right to remain silent. This Court has held several times that raising doubts or expressing concern about continuing followed by continued dialogue do not unambiguously assert the right to remain silent.

*Wilkes*, 917 N.E.2d at 682 (internal citations omitted). In *Miranda*, the United States Supreme Court concluded that "[o]nce warnings have been given the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473. This conclusion, however, is not a per se prohibition against all further questioning of an individual who has indicated that he wishes to remain silent, as the Court later stated "Clearly, therefore, neither this passage nor any other passage in the *Miranda* opinion can sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." *Mich. v. Mosely*, 423 U.S. 96, 102 (1975). Rather, when a suspect has only invoked his right to remain silent

there is not a per se rule prohibiting the authorities from ever initiating a discussion or further questioning the individual on the subject. Rather, it must be shown on a case by case basis that the authorities "scrupulously honored" the defendant's right to cut off questioning at any time, and that he knew and understood these rights and voluntarily waived them.

*Mendoza-Vargas v. State*, 974 N.E.2d 590, 595 (Ind. Ct. App. 2012) (quoting *Moore v. State*, 498 N.E.2d 1, 9 (Ind. 1986)), *trans. denied*. *See also Berghuis v.*

*Thompkins*, 560 U.S. 370, 405 (2010) (stating that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'").

> It is the State's burden to prove that the suspect's right to remain silent was scrupulously honored. There are several non-exclusive factors used to determine whether interrogation was properly resumed, including: the amount of time that lapsed between interrogations; the scope of the second interrogation; whether new *Miranda* warnings were given; and the degree to which police officers pursued further interrogation once the suspect has invoked his right to silence.

*Mendoza-Vargas*, 974 N.E.2d at 595. In this case, the relevant portion of the first interview is as follows:

> [BRIAN BUSICK]: Where did you see [Gilbert] the first time? Where did you see him the first time yesterday? Yesterday?
>
> [RISINGER]: Just outside walking.
>
> [BRIAN BUSICK]: Where at?
>
> [RISINGER]: Around about.
>
> [BRIAN BUSICK]: Around where?
>
> [RISINGER]: In town you know.
>
> [BRIAN BUSICK]: You're walking and he's walking.
>
> [RISINGER]: I don't remember each detail that I do every single day you know what I mean.

[BRIAN BUSICK]: Well I mean the first time that you lay eyes on someone you've never met before were you walking and he was walking in town that's how you saw each other.

[RISINGER]: He just he was crippled and walking with a cane and he looked like he needed a place to stay so I offered it to him.

[BRIAN BUSICK]: In Salem?

[RISINGER]: Yes. Salem, yes.

[MATT BUSICK]: He was walking and he's crippled.

[RISINGER]: I mean

[MATT BUSICK]: He's walking with uh he's older so how did he get from Salem back to your place a couple miles out of town, if you don't have a car?

[RISINGER]: I'm done talking.

[MATT BUSICK]: Why's that?

[RISINGER]: Just because I feel like I'm getting pestered you know what I mean?

[MATT BUSICK]: No, we are just trying to figure it out.

[RISINGER]: I know but I don't even know what's going on you know what I mean? I don't even know.

[MATT BUSICK]: We don't either like I said I'm just trying to figure out. I'm thinking okay we need to talk to Gilbert, did Gilbert set your place, is Gilbert there, is Gilbert walking, maybe we need to talk to Gilbert, maybe he knows what happened. Was there anybody else there hanging out with Gilbert? Um is I'll let you know now the damage didn't go the other trailers or nothing like that so you're okay there. We have stuff we like to answer for the neighbors because you know heat like that sometimes it will

warp like the uh vinyl siding on places. So, we have to get to the whole thing in so we can.

Tr. Vol. III p. 11–12.

[11] Here, Risinger unequivocally invoked his *Miranda* rights by stating "I'm done talking." Under these circumstances, we conclude that "I'm done talking" was Risinger's expressed desire to remain silent. While Risinger could have been clearer in expressing his desire by stating something such as "I'm invoking my right to remain silent," such a formal declaration is not what the law requires. Rather than honoring Risinger's assertion of his right to remain silent, the detectives continued to question him. This failure to scrupulously honor Risinger's invocation of his *Miranda* rights led to the detectives obtaining incriminating statements from Risinger. Thus, we conclude that the statements made by Risinger during the first interview should not have been admitted at trial, with the exception of those made prior to Risinger's invocation of his *Miranda* rights approximately nineteen minutes into the interview.

[12] Regarding the second and third interviews, we also conclude that these interviews should not have been admitted at trial. While it is true that they were conducted the following day and Risinger was Mirandized again, this amounted to nothing more than shutting the barn doors long after the cows had bolted. By the time the second and third interviews were conducted, Risinger had already confessed to starting the fire and killing Givan in the first interview. The second interview regarded the identity of Givan, and the third regarded

Risinger's motive for killing Givan. These subsequent interviews clearly built upon the confession which was unconstitutionally obtained by detectives after they failed to scrupulously honor Risinger's invocation of his right to remain silent during the first interview.

[13] In arguing that Risinger did not unequivocally assert his right to remain silent, the States relies on *Wilkes v. State*, 917 N.E.2d 675 (Ind. 2009), *Griffith v. State*, 788 N.E.2d 835 (Ind. 2003), and *Haviland v. State*, 677 N.E.2d 509 (Ind. 1997), in which the Indiana Supreme Court concluded that the defendants' statements did not amount to an assertion of their right to remain silent. Those cases, however, are distinguishable from Risinger's case. In *Wilkes*, the defendant pointed to his statements "Well, I have, I'm still high and you're going to go away," "No I can end this today with me, and I don't have to know [s***]," and "I don't want to talk about it no more. I don't want to think about it. Cause right now I'm still high," as unequivocal assertions of his right to remain silent. 917 N.E.2d at 682. In concluding that they were not, the Court reasoned,

> This Court has held several times that raising doubts or expressing concern about continuing followed by continued dialogue do not unambiguously assert the right to remain silent. [*Clark v. State*, 808 N.E.2d 1183, 1190 (Ind. 2004)]; *Griffith v. State*, 788 N.E.2d 835, 842 (Ind. 2003) ("I might as well not say anything more," followed by disclosure of information, did not invoke the right to remain silent); *Haviland v. State*, 677 N.E.2d 509, 514 (Ind. 1997) ("I'm through with this," followed by continued dialogue did not unambiguously assert the right to remain silent). Here, after each of Wilkes's purported attempts to end the interrogation, he continued to speak with the detective.

*Id.* at 682–83. Unlike those cases cited by the State, Risinger's statement was neither raising doubts nor expressing concern about continuing. Risinger's statement "I'm done talking," was an unequivocal assertion of his desire to remain silent, and upon hearing it the detectives' questioning should have ceased.

# Conclusion

[14] We conclude that Risinger's waivers of his *Miranda* rights and statements were voluntary. His statement, however, "I'm done talking," was an unequivocal invocation of his right to remain silent pursuant to *Miranda*, and the detectives' continuation of questioning thereafter was a failure to scrupulously honor that right. Therefore, the trial court abused its discretion by admitting at trial the statements made by Risinger during the first interview after he had asserted his *Miranda* rights (at approximately minute nineteen), and the statements he made during the second and third interviews.[4]

[15] The judgment of the trial court is reversed.

Najam, J., and Bailey, J., concur.

---

[4] Risinger also claims that the trial court committed fundamental error by allowing a court-appointed psychiatrist to testify that legal wrongfulness was the proper standard regarding "the wrongfulness of the conduct" under Indiana's insanity statute. Given our disposition above, we need not address this contention, but note that our General Assembly has chosen not to define the wrongfulness standard in the insanity statute and that juries should be instructed in accordance with said statute. *See* Ind. Code § 35-41-3-6(a) ("[A] person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense.").